# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| THE LINCOLN ELECTRIC COMPANY, AND LINCOLN GLOBAL, INC., <br><br> Plaintiffs, <br><br> v. <br><br> SEABERY SOLUCIONES, S.L., SEABERY NORTH AMERICA INC., HASKELL INSTRUCTIONAL TECHNOLOGIES INC., AND DEPCO ENTERPRISES LLC, <br><br> Defendants. | CASE NO.:  1:15-CV-1575 <br><br> **JUDGE DONALD C. NUGENT** |

### THE LINCOLN ELECTRIC COMPANY'S AND LINCOLN GLOBAL. INC.'S OPPOSITION TO DEFENDANTS' MOTION TO REDUCE THE NUMBER OF ASSERTED CLAIMS

The Defendant group Seabery Soluciones S.L. and Seabery North America Inc. (collectively, "Seabery") prematurely ask this Court to substantially limit the number of asserted claims before it has produced *any* notable discovery relating to the implementation or development of the accused product and features, before any substantive action has occurred in the IPRs that it has filed, and prior to any substantive claim construction proceedings.  This case has been ongoing for almost a year, but Seabery has ignored discovery requests and its own affirmative document production obligations under the Local Patent Rules and so far produced only two public documents related to the accused device - a 30-page catalog and a 5-page data sheet.  Contrary to its obligations, Seabery has not produced any confidential or other internal documents.  Now Seabery asks the Court to force Lincoln to prematurely identify "four claims per patent for further proceedings" before producing the documentation and other discovery that

{03839833.DOC;1 }

would be required for Lincoln to make that strategic decision.  These tactics, coupled with Seabery's pending IPR proceedings at the Patent Office, effectively ask Lincoln to throw darts in the dark.

Moreover, while Seabery repeatedly references the number of claims currently at issue (90 claims), Seabery ignores that (1) it has already provided non-infringement and invalidity responses for the 50 claims at issue in each of the '398 and '116 Patents, (2) it has been aware of the '056 and '057 Patent claims since at least February 15, 2016 and (3) it has already provided purported invalidity theories directed to *all* of the currently asserted claims in its IPR petitions before the Patent Office.  Seabery's attempts to portray the perceived burdens of this case fail to tell the real story.  Indeed, the parties recently agreed to a case schedule, which Seabery agrees provides sufficient time to address all claims currently at issue.

Granting Seabery's request would deprive Lincoln of a meaningful opportunity to present its claims while providing little, if any, efficiency benefits for the Court or the parties.  Seabery's motion is nothing more than gamesmanship and should be denied.

I.      STATEMENT OF FACTS

Lincoln filed this action on August 10, 2015, alleging that Seabery's "Soldamatic" welding training system infringed two of Lincoln's patents, U.S. Pat. Nos. 8,747,116 ("the '116 Patent") and RE45,389 ("the '389 Patent") (Dkt. 1).  On November 23, 2015, Lincoln served its Initial Infringement Contentions, providing detailed allegations of how the accused product infringed 14 claims of the '116 Patent and 36 claims of the '389 Patent.  (Dkt. 58-2).  That same day, Lincoln served Seabery with requests for production and interrogatories, including requests seeking discovery regarding the development and implementation of the accused product and financial information relating to that product.  *See* Ex. A, Declaration of Terrance Wikberg dated July 8, 2016 ("Wikberg Decl.") at ¶4, Exhibit 1; *see, e.g.*, *id.* at 12 ("Request No. 19 — All

documents and things referring or relating to the design, development, function, operation, manufacture, assembly and construction of the Soldamatic welding training system."); *id.* at 13 ("Request No. 24 — All documents and things referring or relating to the source code used in any Soldamatic welding training system sold, distributed or imported in the United States."); *id.* ("Request No. 25 — All documents and things referring or relating to the profit, sales, costs of manufacture and revenue associated with the sale, importation, or distribution of the Soldamatic welding training system in the United States.").

On December 23, 2015, Seabery served its Initial Non-Infringement Contentions.  (*See* Dkt. 58-3).  For a large number of the limitations at issue, Seabery refused to provide any non-infringement argument, instead relying on blanket, unsupported assertions that the limitations were "indefinite."  *See, e.g.*, Ex. A, Wikberg Decl. at ¶9, Exhibit 6, at internal Exhibit B, '116 Patent analysis (arguing that *all six* limitations of independent claim 20 of the '116 Patent are "indefinite" but "reserv[ing] the right to identify additional grounds of non-infringement" if they are "found to not be indefinite.").

Pursuant to Local Patent Rule 3.4, Seabery was required to produce along with its Initial Noninfringement Contentions "Documents sufficient to describe the structure, composition and/or operation of the Accused Instrumentality.").  In response to this affirmative obligation, Seabery produced only two documents — a 30-page "Soldamatic Catalog" and a 5-page "Soldamatic data sheet".  Ex A, Wikberg Decl. at ¶5, Exhibit 2.  Neither document provides any detailed information regarding the function and operation of the accused system.

On January 4, 2016, Seabery responded to Lincoln's discovery requests.  Ex A, Wikberg Decl. at ¶6, Exhibit 3.  For the requests related to the accused product, Seabery indicated that further documents would be forthcoming.  *See, e.g.*, *id.* ("Request No. 19 — . . . Seabery

Soluciones's investigation of information in response to this request is ongoing. Subject to Seabery Soluciones's objections, Seabery Soluciones expects that it will produce documents in response to this request located after a reasonable search.").

To date, Seabery has not produced any other documents related to the accused product. Ex A, Wikberg Decl. at ¶6. It has produced no internal documents, confidential or otherwise. *Id.* Its complete document production relating to the accused Soldamatic product consists of a 30-page user manual and 5-page data sheet. *Id.*

On February 15, 2016, Lincoln informed Seabery of the allowance of additional claims related to the '116 Patent that eventually issued as the '056 and '057 Patents, and of Lincoln's intention to add them to the present case. (Dkt. 58-6). In light of this development, the parties agreed to modify the schedule of the case so that neither party was prejudiced. (Dkt. 43). As part of that agreement, Seabery did not demand an arbitrary limitation of the claims at issue. In April 2016, based on this agreement, the newly issued '056 and '057 Patents were added to the case. (Dkt. 49)

Between April 7 and May 9, 2016, Seabery filed IPR Petitions for each of the '116, '398, '056 and '056 Patents at the Patent Office. (Dkt. 57-1, at 1). These IPR petitions included purported invalidity theories for *each asserted* claim of each of the patents-in-suit.

On June 7, 2016, Lincoln served its First Amended Infringement Contentions explaining limitation-by-limitation how Soldamatic further infringes the asserted claims of the '056 and '057 Patents. (Dkt. 58-8).

On June 17, 2016, this Court issued an Order denying Seabery's Motion to Stay and requesting the parties submit a revised proposed schedule that takes into account the number of claims at issue in the present case. (Dkt. 61, at 4). On July 5, 2016, the parties did just that, and

agreed during negotiation of the schedule that certain modifications and concessions relative to the scheduling dictated by the Local Patent Rules sufficiently addresses the efforts needed to deal with the claims at issue in the present case.  Ex A, Wikberg Decl. at ¶7, Exhibit 4.  For example, under the parties' proposed schedule (Dkt. 63), Seabery's Noninfringement Contentions will be due August 8, 2016, which is a greater than one month extension over the time frame provided in the Local Patent Rules.  *See* LPR 3.3.

## II.     STATEMENT OF LAW

District courts may, under appropriate circumstances, set reasonable limits on the number of asserted claims without violating a plaintiff's right to due process.  *In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1312 (Fed. Cir. 2011).  However, such a limitation may only apply to duplicative claims and cannot be used to exclude claims that present independent legal issues (for example, relating to infringement, invalidity, or damages).  *Id.* at 1312–13 (noting that a district court's refusal to allow additional claims that present "unique issues as to liability or damages" "would be subject to review and reversal.")

Plaintiff is entitled to "the opportunity to determine whether particular claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses" prior to forced selection of specific claims.  *Id.* at 1313 n.9.  Therefore, an order limiting claims "too early in the discovery process" could violate Plaintiff's right to due process.  *Id.*; *see also Fleming v. Cobra Elecs. Corp.*, No. 1:12-cv-00392-BLW, 2013 WL 1760273, at *3 (D. Idaho Apr. 24, 2013) ("In affirming the claim reduction process, the Federal Circuit observed that it should not occur too early in the litigation, before the plaintiff has conducted the discovery necessary to determine what claims are dispensable[.]"); *Technical Consumer Products, Inc. v. U.S. Philips Corp. et al.*, No. 1:12-cv-02546-CAB (N.D. Ohio Dec.

5, 2013) (denying as "premature" a motion to limit the number of asserted claims prior to claim construction).

Finally, although the Federal Circuit in *Katz* acknowledged that district courts *may* limit asserted claims in certain circumstances, they are not required to do so.  Courts in this district have denied motions to limit the number of asserted claims, *see, e.g.*, *Tech. Consumer Prods*, No. 1:12-cv-02546-CAB (N.D. Ohio Dec. 5, 2013); *Emsat Advanced Geo-Location Tech. v. AT&T Mobility*, 4:08-cv-00822-JRA (Feb. 16, 2010) (N.D. Ohio ("The Court does not intend to impose an arbitrary limitation on the number of claims Plaintiffs may pursue. While it would encourage Plaintiffs to cull the claims as soon as practicable in order to prevent the expenditure of the resources of both the Court and the parties, it does not intend to preclude Plaintiffs from pursuing claims that, once relinquished, cannot be pursued in future.").

### III.  ARGUMENT

Seabery's request that the Court limit Lincoln to four asserted claims per patent is arbitrary, premature and improperly narrow.  Moreover, limiting the asserted claims at this early stage results in tremendous prejudice to Lincoln and would not make the case more efficient for the Court and/or the parties.  Seabery's motion should be denied.

**A.  It Would be Unfair and Inappropriate to Limit Lincoln to an Arbitrary Number of Asserted Claims at this Early Stage.**

1.  *Seabery's Deficient Production and Discovery Responses*

As described above, despite multiple discovery requests and affirmative obligations under this Court's rules to provide documents relating to the functionality and implementation of the accused product, Seabery has only produced *two* documents even arguably in that category - a 30-page public catalog and a 5-page data sheet for Soldamatic. Ex A, Wikberg Decl. at ¶5, Exhibit 2.  Remarkably, Seabery nonetheless claims that Lincoln "has sufficient information to

reasonably limit the number of asserted claims." Dkt. 62 ("Motion") at 2. Seabery bases this statement in part on its supposedly "voluminous" non-infringement contentions, even though Seabery's contentions lack definitive statements about the functionality and implementation of the accused product and consist substantially of blanket allegations of "indefiniteness" and vague reservation of rights. Ex. A, Wikberg Decl. at ¶9, Exhibit 6, at internal Exhibit B, '116 Patent analysis, *see e.g.,* claim 20 analysis.

Seabery's demand to drastically reduce the number of asserted claims in light of its complete disregard for its discovery obligations on the subjects most relevant to the case is nothing more than a strategic attempt to prejudice Lincoln. At this point, the number of asserted claims is entirely appropriate in light of the breadth and scope of Seabery's infringement of Lincoln's intellectual property rights. As a strategic and practical matter, of course Lincoln does not expect to separately prove infringement of each of these claims at trial; at the appropriate time, Lincoln will narrow its allegations to a set of the most representative asserted claims to streamline the case and present the issues most clearly to the jury. Although the Court has certain powers, if it so chooses, to require selection of asserted claims, it may not use those powers to exclude non-duplicative claims and may not force a plaintiff to narrow its infringement allegations before it has sufficient discovery to determine which "claims might raise separate issues of infringement or invalidity in light of the defendants' accused products and proposed defenses." *Katz*, 639 F.3d at 1312–13 & n.9. Until Lincoln receives appropriate discovery from Seabery relating to the functionality and implementation of the product at the heart of this case and guidance from this Court on claim construction, Lincoln will not be in a position to strategically evaluate and narrow the claims for trial.

Seabery is, on the one hand, insisting that Lincoln significantly limit its allegations of infringement while, on the other hand, not producing to Lincoln the discovery necessary to make that determination.  Such tactics cannot be and should not be rewarded.

2. *Four-Claims-Per-Patent Insufficient to Cover Distinct Legal Issues*

Even if Lincoln had been provided with sufficient discovery from Seabery to strategically assess and narrow its asserted claims — which it has not — a court-ordered limit of four-claims-per-patent would be improperly narrow in this case.

As discussed above, a court-ordered limitation on the number of asserted claims may not be used to exclude claims that present independent legal issues relating to infringement, invalidity, or damages.  *See Katz*, 639 F.3d at 1312–13 (Fed. Cir. 2011).  Here, it would be plain to any observer that four-claims-per-patent is insufficient to cover all non-duplicative claims.  For example, for the '398 Patent, Lincoln currently asserts independent claim 89 and 11 other claims dependent therefrom.  Each of those dependent claims presents a new limitation and therefore a separate legal issue, particularly in light of the numerous prior art references and combinations in play.  The same is true for each of the asserted patents.  As a result, a limit of four-claims-per-patent would be entirely insufficient to cover the relevant legal issues and only exclude fully duplicative claims at this stage of the case.[1]

Therefore, Seabery's Motion should be denied.

---

[1] Again, this is not to suggest that Lincoln expects to go to trial on all of the currently asserted claims.  Lincoln has no such intention, but it has the right to make an informed decision about which claims to assert and cannot be precluded from bringing claims that present independent legal issues.  Seabery's unilateral demand that the case be limited to four claims per patent would be both arbitrary and prejudicial.

### B. Seabery Has Failed to Demonstrate that a Limitation on the Number of Asserted Claims At This Early Stage Would Be Necessary or Beneficial

Nothing in Seabery's Motion suggests that prejudicing Lincoln now with an arbitrary limitation on the number of asserted claims would be necessary or beneficial. While it cannot be denied that Seabery would be benefitted by the granting of its Motion, those benefits are not realized in a reduction of litigation burden, but rather in forcing Lincoln to prejudice its case without having the benefit of discovery or claim construction. Further, there is nothing to suggest that the Court would be benefitted by such a reduction at this time.

First, a reduction in the number of asserted claims would have little impact on Seabery's invalidity contentions. Seabery has already prepared and served invalidity contentions (identifying a virtually infinite number of possible combinations)[2] for more than half of the currently asserted claims. (*See* Dkt. 58-4 at 13-16). Moreover, apparently undaunted by the number of claims at issue a few months ago, Seabery filed IPRs seeking to invalidate each of the 90 claims at issue. Curiously, prior to filing the IPRs, Seabery did not seek intervention of the Court to reduce the number of claims it pursued at the Patent Office. Seabery has already analyzed and disclosed invalidity arguments for each of the asserted claims. Thus, a reduction of claims at this time will save little, if any effort, in Seabery's preparation of invalidity contentions.

Similarly, there is little benefit to be gained by Seabery in the preparation of its infringement contentions. Seabery has already completed and served non-infringement contentions for the 50 claims at issue in the '398 and '116 Patents. Further, Seabery expressly acknowledged that the '056 and '057 Patents are related to the '116 Patent, sharing a common

---

[2] In its Motion, Seabery represents that "Seabery served a 30-page invalidity contention document." (Dkt. 62 at 2). While true, Seabery failed to mention that it also served 24 different claim charts totaling 608 pages. Ex A, Wikberg Decl. at ¶10.

{03839833.DOC;1}  -9-

specification. (Dkt. 62 at 4). Although the newly asserted claims differ in scope from their equivalents in the '116 Patent, they share some of the same limitations and claim terms and involve the same accused product. Adapting Seabery's barebones infringement contentions to include the newly asserted claims of the '056 and '057 should be a relatively straightforward proposition.

Likewise, there will be little, if any, savings for the parties or the Court on claim construction. As described above, and as Seabery concedes, the claims in the newly issued '056 and '057 Patents use terms and phrases that generally correspond to those in the '116 Patent, so it is not clear that many, if any, additional terms or phrases would be required for construction. (Dkt. 62 at 4). The '056 and '057 Patents share a common specification with the '116 Patent, so the evidence in support of the relevant claim constructions will be the same. In reality, the burdens to the Court and the parties in the claim construction process will come not from the number of asserted claims, but from the number of *terms* proposed for construction. In this regard, to the extent Seabery wishes to relieve the burdens of claim construction, such power rests solely in its control. Prior to the addition of the '056 and '057 Patents, Seabery identified no less than *43* claim terms for construction, as compared to Lincoln's 5 terms. (Dkt. 58-5). Seabery knows full well that this is impracticable and that the parties and the Court will ultimately limit the number of terms for construction regardless of the number of claims in dispute.

If anything, limiting the claims at this early juncture — prior to substantial document production or claim construction — has the possibility of making claim construction *less* efficient. Under *Katz*, notwithstanding a court-ordered limitation on the number of asserted claims, Plaintiff *must* be allowed to assert additional claims if it can demonstrate that they

"present[] unique issues as to liability or damages."  639 F.3d at 1312–13.  If the Court were to grant Seabery's motion and force Lincoln to elect at this stage an arbitrary number of claims per patent, it is easily foreseeable that additional issues might arise later in the case (for example, based on further discovery or the Court's claim construction order) that would draw particular relevance to a claim that might otherwise have been considered duplicative.  In such a scenario, the Court would be *required* to allow Lincoln to add that claim back into the case, which might require revisiting claim construction for any previously unconstrued terms or phrases and substantial delay of the overall case.  *See Katz*, 639 F.3d at 1312–13 (noting that a refusal to allow adding such claims "would be subject to review and reversal").  .

Finally, Seabery's proposal would not provide any savings in terms of discovery.  Regardless of the number of patents or claims in this case, there is a single product at issue — the Soldamatic system.  Whether Lincoln is asserting 1 claim or 100 claims, the burdens and scope of discovery remain virtually unchanged.  Seabery has provided no argument or explanation as to how or why forcing Lincoln to arbitrarily restrict its asserted claims would relieve the parties or the Court of any notable discovery burden.  Seabery appears unwilling to take its discovery obligations seriously even with the currently asserted claims, so it is difficult to imagine (and impossible to condone) any *reduction* in the amount of documents it would intend to produce.  Seabery has not paired its demand that Lincoln drastically limits its asserted claims with any offer of its own to reduce its fantastically voluminous invalidity contentions.  To the contrary, Seabery is now threatening to seek to amend its Answer to add numerous allegations of inequitable conduct, which would greatly increase the discovery burdens in this case.  Ex A, Wikberg Decl. at ¶8, Exhibit 5.  There can be no serious debate that an allegation of inequitable conduct will greatly increase the burdens in this case.

Seabery's strategy is clear — it is perfectly content with burdensome litigation, so long as those burdens fall exclusively on Lincoln. Seabery's Motion is litigation gamesmanship at its worst and should be denied.

### C. The Parties Have Already Agreed to a Modified Schedule to Provide the Parties with Time to Deal with the Asserted Claims.

In the Court's Order (Dkt. 61) denying Seabery's Motion to Stay, the Court recognized the number of claims at issue and permitted the parties to appropriately modify the scheduling set forth in the Local Patent Rules. The parties did just that and filed a proposed schedule on July 5, 2016. (D. 63), which greatly extends respective time frames provided in the Local Patent Rules. For example, the schedule now allows for Seabery's Non-Infringement Contentions to be served on August 8, 2016, which represents an extension of over a month greater than the deadline provided in the Local Patent Rules.[3]  In jointly proposing this schedule, Seabery has already agreed that this schedule provides sufficient time to address the number of claims at issue. Ex A, Wikberg Decl. at ¶7, Exhibit 4. With this agreement in place, granting Seabery's Motion would represent even further prejudice to Lincoln by needlessly extending the case schedule and providing Seabery the delay that it previously sought — and was denied — in its recent motion to stay. This Court has already recognized that unnecessary delay in this case would "unduly prejudice Lincoln," given "Lincoln and Seabery are direct competitors and . . . Seabery's alleged infringement of the patents-in-suit is ongoing." (Dkt. 61).

### IV. CONCLUSION

In view of the foregoing, Seabery's Motion should be denied. Seabery's Motion is nothing more than an effort to significantly and arbitrarily prejudice Lincoln and reward

---

[3] Lincoln's Amended Infringement Contentions were served on June 7, 2016. Pursuant to LPR 3.3, Seabery's Non-Infringement Contentions should be due on July 7, 2016. LPR 3.3.

Seabery's gamesmanship to date. This type of conduct should not be permitted. The parties should be allowed to proceed with the case with the schedule agreed upon (Dkt. 62).

Dated:  July 11, 2016                                             Respectfully submitted,

                    By: */s/ John S. Cipolla*
           John S. Cipolla (0043614)
           jcipolla@calfee.com
           CALFEE, HALTER & GRISWOLD LLP
           1405 E. 6th Street
           Cleveland, Ohio  44114-1607
           Phone: (216) 622-8200
           Fax: (216) 241-0816

           Terrance J. Wikberg (DC Bar No. 479289)
           Admitted *Pro Hac Vice*
           twikberg@perkinscoie.com
           PERKINS COIE LLP
           700 NW 13th Street
           Suite 600
           Washington DC, 20005-3960
           Phone: (202) 654-6201
           Fax: (202) 654-6211

           *Attorneys for Plaintiffs*
           *Lincoln Electric Company and*
           *Lincoln Global, Inc.*

-14-

## CERTIFICATE OF SERVICE

    I hereby certify that on July 11, 2016, I filed the foregoing *THE LINCOLN ELECTRIC CO.'S AND LINCOLN GLOBAL, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO REDUCE THE NUMBER OF ASSERTED CLAIMS* with the Court's CM/ECF System which will notify all registered parties of such filing.

                                                     */s/ John S. Cipolla*
                                                   One of the Attorneys for Plaintiffs